Burns *v.* The People.

In an indictment for perjury at an election, a general averment of jurisdiction in the board of inspectors to administer the oath is sufficient, without stating in detail the names, or the number, of the inspectors who constituted the board.

It is not a valid objection to such an indictment that it does not state that the inspectors of election in the ward before which board the alleged perjury was committed, were acting for such ward.

Nor is it a valid objection that the indictment does not show the manner and form in which the oath was administered, viz., that the defendant was sworn to tell the truth, or to truly answer such questions as should be put to him by said board, touching his right to vote. If it avers that the defendant was "duly sworn, and did take his corporal oath," it means that he was

Burns *v.* The People.

sworn according to the law applicable to such a case; and embraces all that is required in the statute.

Neither is it a valid objection to the indictment that it does not show upon its face that the oath required by statute was administered to the defendant; if it avers that he was duly sworn and took his corporal oath before the board, and that he falsely swore that he had not voted.

The averment that a general election was held, at, &c., pursuant to the laws and constitution of the State, before a board of inspectors legally constituted and authorized according to law, is sufficient, in respect to the place, without stating that the place mentioned in the indictment had been legally appointed.

The rule is that assignments of perjury must be made by special averment negativing the oath. A general allegation that the defendant swore falsely is not enough.

Where the false oath alleged was that the prisoner had sworn that he had not voted at the election, and the assignment of the perjury was that he had voted previously at said election, at the 4th ward, " at the house of T. L. W. in said ward," without stating that he voted before a board of officers duly constituted and authorized according to law, or that any lawful election had been appointed; *Held* that the assignment was too general and uncertain, and was not explicit enough to support itself, or to show that the defendant committed the crime. POTTER, J., dissented.

In the absence of any averment to that effect, it will not be inferred that the election was lawfully held at the place named.

Such a defect is a substantial one, and not merely formal; and is not obviated by the statute of jeofails.

$\text{W}$RIT of error to the court of oyer and terminer of the county of Schenectady, to reverse a conviction for perjury at an election.

The indictment alleged, that on the 8th day of November, A. D. 1870, at the city of Schenectady, in the county of Schenectady, and State of New York, at a general election, held in said city and county aforesaid, for the choice of a governor, lieutenant-governor, a comptroller, two canal commissioners, an inspector of State prisons of the State aforesaid; for the choice of a member of congress from the eighteenth congressional district of the State aforesaid, and for the choice of a member of assembly, a county clerk, four coroners and one justice of sessions of the county aforesaid, held pursuant to the constitution and

laws of this State, before the board of inspectors of elections of the second ward of the city of Schenectady aforesaid, then sitting at the house of "steamer engine company No. 4," in the second ward of the city aforesaid, which said board being then and there legally constituted and organized according to law to receive all legal and lawful votes or ballots for said officers to be elected as aforesaid, the defendant at the day and date aforesaid, and at the place last aforesaid, appeared before the board of inspectors of elections aforesaid, and offered his vote or ballot for some or all of the officers so as aforesaid to be chosen or elected; whereupon, before his vote or. ballot was given in, he was duly challenged touching his right or legal ability to vote at said election for the said officers, so as aforesaid to be chosen or elected, and, on being challenged, he was then and there duly sworn and did take his corporal oath before the said board, so constituted and sitting as aforesaid, the said board being then and there duly authorized and empowered to administer an oath to Barnard Burns, the defendant, in that behalf, and he, the said Barnard Burns, being then and there sworn by and before said board, and, not regarding the laws of this State, nor having the fear of God before his eyes, but being moved, &c., did then and there falsely, willfully, feloniously and corruptly say, depose and swear, to and before the board aforesaid, touching his right to vote, and his qualifications as an elector and voter at such election for the choice of the officers so as aforesaid to be chosen and elected, in substance and effect as follows, among other things, that he, the said defendant, had not voted at the election aforesaid; whereas, in truth and in fact, he, the said defendant, had voted at the election aforesaid, to wit, previously and on the day aforesaid, at the fourth ward of the city aforesaid, at the house of Thomas L. Wasson, in said ward and city, and for the officers to be chosen as aforesaid. And that the said Barnard Burns, on 8th day

of November, A. D. 1870, at the city and county of Sche-
nectady, and State of New York, did commit willful and
corrupt perjury, contrary to the statute in such case made
and provided, and against the peace of the people of the
State of New York and their dignity.

The defendant, being arraigned, pleaded not guilty.

On the trial, the defendant's counsel moved to quash the
indictment on and for the several grounds hereinafter set
forth.    The court overruled each and every exception of
the defendant's counsel to the said indictment, to each of
which the defendant's counsel excepted.

Under the above ruling of the court, the defendant
pleaded guilty.   The defendant's counsel then moved to ar-
rest judgment against said defendant on the ground that the
indictment was defective in the following particulars, (the
same as above referred to for quashing the indictment) :

1. That the indictment does not state the number of
inspectors of election ; so that the court may see that the
board of inspectors was legally constituted.

2. That the indictment does not state that the inspect-
ors of election in the second ward of the city of Schenec-
tady, before which board the alleged perjury was committed,
were acting for such second ward.

3. That the indictment does not show that the defend-
ant was sworn to tell the truth, or to truly answer such
questions as should be put to him by said board touching
his right to vote.

4. That the indictment does not show upon its face that
the oath required by statute was administered to the de-
fendant, or that he falsely swore to any part thereof.

5. That the indictment does not show that " steamer
engine house number 4," the place mentioned in the in-
dictment, was the legally appointed and duly constituted
place for holding elections in said second ward.

6. That the indictment does not show that " the house
of Thomas L. Wasson," the place mentioned in the in-

dictment, was the legally appointed and duly constituted place for holding elections in the fourth ward of the city of Schenectady, or that any legal election was then holden, at such house.

The court overruled each and every of the above exceptions to the indictment, and the defendant's counsel excepted.

*Robert Payne*, for the plaintiff in error.

I. The indictment does not state the number of inspectors of election, so that the court may see that the board of inspectors was legally constituted. 1. A board of inspectors of elections is a tribunal of special and limited jurisdiction, and the facts warranting its exercise of authority must be pleaded. In no case is it sufficient to allege, in general terms, that such a tribunal has jurisdiction, without an averment of facts constituting the same. (*Ladbroke* v. *James, Willes*, 199. *Sollers* v. *Lawrence, Id.* 416. *Dakin* v. *Hudson*, 6 *Cowen*, 221. *Cleveland* v. *Rogers*, 6 *Wend.* 438, *and cases cited. Lawton* v. *Erwin*, 9 *id.* 233. *Sackett* v. *Andross*, 5 *Hill*, 327. *People* v. *Koeber*, 7 *id.* 39. *Cornell* v. *Barnes, Id.* 37, *n., and cases cited. Turney* v. *Roby*, 3 *N. Y.* 193. *People* v. *Powers*, 6 *id.* 50. *People* v. *Weston*, 4 *Park. Cr. Rep.* 226. 1 *Chit. Cr. Law, ed.* 1819, *p.* 138. *Elkin* v. *The People*, 28 *N. Y.* 177. *Barnes* v. *Harris*, 3 *Barb.* 603. *Ayres* v. *Covill*, 18 *id.* 260.) 2. The indictment does not state that the inspectors of election in the second ward of the city of Schenectady, before which board the alleged perjury was committed, were acting for such second ward.

II. A board of inspectors of election, being a tribunal of special and limited jurisdiction, have territorial jurisdiction only in and for that district or ward in and for which they are legally sitting and acting, and the omission to aver facts showing territorial jurisdiction, such as that they were duly elected and organized, and the constitu-

tional oath administered to said board in pursuance of the statute, is fatal to the indictment. (*Election Laws, tit.* 3, *art.* 3, § 21; *and tit.* 4, *art.* 1, §§ 1, 2, &c., *and cases above cited.*) 3. The indictment does not show that the defendant was sworn to tell the truth, or to truly answer such questions as should be put him by said board, touching his right to vote. 4. The indictment does not show upon its face that the oath required by statute was administered to the defendant, or that he falsely swore to any part thereof.

III. and IV. The statute prescribes certain oaths to be administered to a person challenged, and certain formula for the guidance of inspectors, and the criminal pleader must incorporate in the indictment at least the violated portion of the oath, either in words or effect, and must allege that the proceedings prescribed in the formula were had, or the indictment will be insufficient. (*Election Laws, tit.* 3, *art.* 2, §§ 13–18, *and cases above cited.*)

The indictment does not show that "steamer engine house No. 4," the place mentioned in the indictment, was the legally appointed and duly constituted place for holding elections in said second ward.

The indictment does not show that "the house of Thomas L. Wasson," the place mentioned in the indictment, was the legally appointed and duly constituted place for holding elections in the fourth ward of the city of Schenactady, or that any legal election was then holden at such house.

V. and VI. The statute makes it the duty of common councils of cities, to designate on the first Monday of every October, the place in each election district in such city, at which elections shall be held during that year, and to give public notice thereof. This indictment does not allege, even in the most general terms, that either of the places at which this defendant is alleged to have voted, or that the place at which the alleged perjury of this defendant was committed, was in any manner authorized or designated

as the place for holding such elections, and is therefore bad. (*Election Laws, tit.* 3, *art.* 3, § 18, *and cases above cited.*)

*E. W. Paige,* for the defendants in error.

I. The indictment states that "said board was then and there duly authorized and empowered to administer an oath to the said Barnard Burns in that behalf," and that is sufficient. (*The People* v. *Tredway,* 3 *Barb.* 473. *The People* v. *Phelps,* 5 *Wend.* 19. *Campbell* v. *The People,* 8 *id.* 637.) In *Campbell* v. *The People,* an indictment in the precise form of this, down to the assignment, was sustained. This meets the 1st, 2d and 5th objections.

II. The indictment states that Burns was "duly sworn," and did "take his corporal oath;" either of which is sufficient. (*State* v. *Farron,* 10 *Rich.* 165. *Dodge* v. *State,* 4 *Zab.* 455. *Tuttle* v. *The People,* 36 *N. Y.* 436. *Respublica* v. *Newell,* 3 *Yeates,* 407.) Besides, our statute of oaths does not require an affiant to be sworn to tell the truth, or to answer truly. This meets the 3d objection.

III. As to the fourth objection. The indictment is drawn under the general statute of perjury, and not the election law, but, if otherwise, it is only necessary to set forth the part of the oath to be negatived by the assignor. (*Campbell* v. *The People,* 8 *Wend.* 638.)

IV. As to the 6th objection: 1. The rule as to assignments is that the indictment must negative the oath by special averment. "Whereas in truth and in fact," &c. The rule then branches. If the oath be of a particular fact, negativing that fact in the words of the oath will be sufficient. · But if the oath be general, and the assignment as general in the negative; as if a man swear that he has paid all his debts, and the assignment be that he has not paid all his debts; this would be bad for want of certainty, as it would afford the defendant no information of what was intended to be proved, but the assignment must show in what respect or in what instances he has not done so.

(2 *Archb.* 600.)   Lord Ellenborough says, (*Rex* v. *Perrott,* 2 *M. & S.* 386:) "Suppose the offense had branched out into twenty or thirty matters of pretense, of which some might be true, and used only as the vehicle of the falsity, are we to understand from this form of charge that it indicates the whole to be false, and that the defendant is to prepare to defend himself against the whole? That would be contrary to the plain sense of the proceeding, which requires that the falsification should be applied to the particular thing to be falsified, and not to the whole." The assignment here negatives the oath in its words, and if the oath state a particular fact only, that is sufficient. If the oath had read: "He had voted at the election," it would undoubtedly have been single, and the question is narrowed to this; whether the negation of a particular fact makes a multifarious statement. If it do not, the assignment that "he had voted at the election aforesaid," is good without specifying time or place. 2. This construction follows the precedent of the election law. The assignment negatives the words of the statute. 3. Granting the oath to be general, the assignment points out a single act sufficiently. It tells what Lord Mansfield called an intelligible story. The defendant could not "have voted, at the election aforesaid," and "for the officers aforesaid," and have done all these things at the house of Wasson, in the fourth ward, unless Wasson's house "had been the legally appointed and duly constituted place for holding elections in the fourth ward of the city of Schenectady," or unless a legal election had been held at such house. The words *vote* and *election* are complete in their signification, otherwise the oath prescribed by statute would be bad. And the averments of time and place give the defendant all possible information of what is intended to be proved. 4. The matters stated in the sixth objection are matters of form, within the meaning of the statute of jeofails. "The indictment contains the substance of the offense,

with the circumstances necessary to render it intelligible, and to inform the defendant of the allegations against him." (5 *Wend.* 20.   8 *Barb.* 551.   22 *N. Y.* 150.   6 *id.* 62.)

V. If the use of the negative makes Burns' oath multifarious in this indictment, though it does not have that effect in the election law, the people are bound, in assigning the perjury, to show a special act of voting.   This is done in the indictment; but it is done in such an informal manner that if it were tested by the strict rules of criminal pleading in force before the statute of jeofails, it would, perhaps, be insufficient.  The question is, then, whether the assignment of a special act of perjury must be stated, with the formal precision which those rules require; and it is submitted that no such precision is required, or ever has been required.   The rule laid down by all the authorities is that the acts must be set forth in such a manner as to " afford the defendant information of what is intended to be proved."   Before 1814 it was always sufficient to negative the words of the oath.   See *Rex* v. *Atkinson, decided in* 1785, (*Deac. C. L.* 1017; *and Bacon's Ab. tit. Perjury, C,*) where the oath was that the defendant " never did, at any time during his transactions with the commissioners of the victualing office, charge more than the usual sum of sixpence per quarter beyond the price he actually paid for any malt or grain purchased by him for the said commissioners, as their cornfactor;" the asssignment alleged that the defendant did charge more than sixpence per quarter for and in respect of such malt and grain so purchased; and it was held to be good.   In 1814 the king's bench, in the case of *Rex* v. *Perrott*, (2 *M. & S.* 380,) in deciding a case of false pretenses, construed the 23*d Geo.* 2, *ch.* 11, which reads that it shall be " sufficient to set forth the substance of the offense charged, together with the proper averments to falsify the matter wherein the perjury is assigned," in this way; that the words "proper averments" meant specific charges, "in order to

give notice to the party of what he is to come prepared to defend, and to prevent his being distracted amidst the confusion of a multifarious and complicated transaction, parts of which only are meant to be impeached for falsehood."

In 1825 it was held by Abbott, Ch. J., at *nisi prius,* (*Rex* v. *Hopper, Ry. & M., N. P. C.,* 210,) that where the defendant swore he had inserted in his schedule, under the insolvent debtors act, all debts due to him, the assignment must state what debt he is charged with omitting. The judge says: "If the assignment of perjury does not *at all* state what debt the defendant is charged with omitting, how can he possibly be prepared to make a defense." And upon the authority of this case, the rule is laid down in *Archbold, vol.* 2, *p.* 966, (*Banks & Bros.* 7th ed.,) as follows: "If the statement be general, and the assignment is general in the negative—as if a man swear that he has paid all his debts, and the assignment be that he has not paid all his debts—this would be bad for want of certainty; for it would afford the defendant no information of what was intended to be proved; but the assignment must show in what respect, or in what instances, he has not done it. These are all the cases except *Rex* v. *Parker,* to be noticed presently.

To recapitulate: The case of *Rex* v. *Atkinson* proves one of two things; either that a negative oath is not multifarious, in which case this indictment is certainly good, and the other cases are not inconsistent with it; or else that in 1785 it was sufficient to negative a multifarious oath in its words. If the latter, then the rule is changed by *Rex* v. *Perrott,* and *Rex* v. *Hopper* amounts to nothing more than this; that the special act assigned must be so stated that the defendant may know what is intended to be proved against him; in which case, again, this indictment is good. Besides, the case of *Rex* v. *Perrott* is upon a question of false pretenses, and so cannot be called a

decision upon a question of perjury; and *Rex* v. *Hopper* is nothing but a *nisi prius* case.

It is perhaps proper to say that the law of 1785 is the law of this State, and that subsequent decisions in England are not controlling here.

Once more; the assignment states that Burns voted at the house of Thomas L. Wasson, &c., at the election aforesaid, and the previous description of the election is so full and ample that, it is submitted, everything else is matter of form within the statute of jeofails, and the decisions above cited, and general words are sufficient where the certainty lies within the defendant's knowledge. (*Com. Dig. "Pleader," C.* 26.)

VI. At all events, the defect is cured by the plea of guilty. The defendant should have demurred, as was held by Lord Chief Justice Tindall in *Rex* v. *Parker*, (1 *Car. & Marsh.* 639.) There the oath was that the defendant had paid, in full, all his creditors but two, and the assignment was that " the creditors were not all, with two exceptions, paid by the defendant in full." At the trial the prosecution attempted to prove debts not paid, and of course not specified in the assignment. To which it was objected that the assignment did not set them forth. But it was held that if the assignment was too general, the defendant should have demurred, and since he had not done so, the evidence must be admitted. (*Pp.* 643, 644.) And that bad assignments shall be aided after verdict, was decided in 2 *John.* 125, and *Skin.* 344.

A motion to quash lying in the discretion of the court, and granted only where a motion in arrest would be granted, (1 *Archibold's Pl.* 237, *Banks & Bros.* 7th ed.,) and not being the subject of exception when refused, (*Id. n.* 1,) cannot embarrass the people, upon a writ of error.

MILLER, P. J. The first objection urged to the indictment is, that it is defective because it does not state the

number of the inspectors of the election to be held.  It alleges that "the board being then and there duly authorized to administer an oath," &c., and that Burns being sworn, &c., did commit perjury.  I think that the general allegation of jurisdiction to administer the oath is sufficient, without stating in detail the names or the number of the inspectors who constituted the board.  Even if there might be some doubt upon the question whether all the facts showing jurisdiction should be specifically stated, if this point was presented for the first time, yet the authorities hold, as I understand, that a general averment of jurisdiction is sufficient, in an indictment for perjury.  In *The People* v. *Phelps*, (5 *Wend.* 9,) it was held that in an indictment for perjury, by an insolvent debtor, on the oath taken by him in presenting his petition, &c., it is not necessary to set forth the facts to show jurisdiction, as is done in civil cases; but that it is enough to aver, generally, that the officer had lawful and competent authority to administer the oath.  The specific objection was taken, that the indictment was defective in this respect, and it was held that an averment of the court's authority to administer the oath was sufficient.  In *Campbell* v. *The People*, (8 *Wend.* 636,) it was decided that in an indictment for perjury, against a person voting at an election, an averment that he was sworn by and before the board of inspectors, is a sufficient averment that the oath was administered by the board, and that it would be enough to allege that he took the oath before the board, they being duly authorized to administer it.  Although the distinct point now made was not taken, yet the case involved the very question which now arises; and the form of the indictment is similar to the one in the case at bar, in its leading characteristics.  In *The People* v. *Tredway*, (3 *Barb.* 470,) it was held that it was not necessary to set forth facts, in the indictment, sufficient to show that the officer who entertained the proceedings had jurisdiction

to administer the oath; and the same principle was asserted, and the cases last cited followed. These authorities are conclusive.

The second objection, that the indictment does not state that the inspectors were acting for the second ward, comes within the same principle, and must fall with the first one.

As to the third objection, to the effect that the indictment does not show the manner and form in which the oath was administered, I think it is not well taken. It avers that Burns was "duly sworn, and did take his corporal oath;" and I think this embraces all that is required in the statute. It means that Burns was sworn according to the law applicable to such a case. It was not necessary to specify the particular mode in which the prisoner was sworn, or the particular oath which he took; and a general averment that he was duly sworn is enough. (*See Tuttle* v. *The People*, 36 *N. Y.* 436, *and cases cited.*)

The fourth objection—that the indictment does not show upon its face that the oath required by the statute was administered to the defendant, or that he falsely swore to any part thereof—is also unavailable. The indictment avers that he was duly sworn; that is, lawfully, and according to the statute applicable to such a case; that he took his corporal oath before the board; which means that the proper oath was administered to him; and that he falsely swore that he had not voted. In *Campbell* v. *The People*, it was held that it was not necessary to set out the whole oath; and that such parts as are alleged to be false, and are material, in a given case, are all that is requisite. The portion of the indictment embraced in the fourth objection was within this rule, and entirely sufficient.

The remarks made as to the first and second objections are applicable to the fifth. The averment that a general election was held pursuant to the laws and constitution of the State, before a board of inspectors legally constituted

and authorized according to law, was sufficient, I think, without stating that the place had been legally appointed.

The sixth objection relates to the assignment of the perjury. The false oath alleged was that the prisoner had sworn that he had not voted at the election. The assignment was that he had voted previously at the fourth ward, " at the house of Thomas L. Wasson, in said ward," without stating that he voted before a board of officers duly constituted and authorized, according to law, or that any lawful election had been appointed, or was held, at the place named. The rule is, that assignments of perjury must be made by special averment negativing the oath; a general allegation that the defendant swore false, is not enough. (1 *Arch. Crim. Plead.* 538, § 297, 4th *Am. ed.*) If the assignment had stated that the defendant had previously voted at the election, clearly it would not have been sufficient; as such an averment is not specific, and does not show that he had voted at an election unlawfully held, and does not furnish the defendant full information as to the character of the charge made. If the defendant had voted at the place named, and there was no authority to hold the election there, and no officers authorized by law to receive the vote, clearly the oath afterwards made would not constitute a willful perjury. The assignment of the perjury is too general and uncertain, and is not explicit enough, to support itself or to show that the defendant committed the crime. (*Clark* v. *The People*, 2 *Lansing*, 329, 331.) It is no answer to this view of the subject to say that he could not have voted as alleged at the place named, unless it was the legally appointed and duly constituted place for holding the election, or unless a legal election was held there. In the absence of any averment to that effect, it is not to be inferred, I think, that the election was lawfully held at the place named. It may have been held there without authority, and in violation of law, and as the contrary does not appear, the indictment does

not present an intelligible story from which it appears that the crime of perjury has been committed. It is clearly defective in this respect, and for this reason cannot be upheld. The defect is a substantial one, and not merely formal, and is not obviated by the statute of jeofails. (1 *R. S.* 728, § 52.) The indictment does not contain the substance of the offense, with the circumstances necessary to render it intelligible, and inform the defendant of the allegations against him. (5 *Wend.* 20. 8 *Barb.* 552. 22 *N. Y.* 150. 6 *id.* 52.)

By reason of the defect named, the conviction must be reversed.

PARKER, J., concurred.

POTTER, J. I concur with the presiding judge in his opinion, except as to the sixth objection, upon the question of the assignment of perjury. The occasion, the time and place where the oath was taken, the authority of the officer to administer the oath, and the matter sworn to, were all well alleged, and fully and sufficiently assigned. The oath administered was prescribed by statute; it contained multifarious matters, but one distinct particular of which was charged as being false, to wit, *that you have not voted at this election.* And the falsity was charged in this, to wit, that the said Barnard Burns had previously, and on the same day, *voted at the election aforesaid;* and then, with more particular specification, stated the ward, place in the ward, &c., *for the officers aforesaid.* This assignment is as broad, and more specific than the statute which creates the offense. The character of the election was fully stated; it was an election known to the law, and one at which the crime of perjury could be committed. It was an election at which the voter could vote but once, and it was the voting at *the* election more than once, with the falsity of the oath, that constituted the crime. At any

other election, or before any body unauthorized to receive his vote, it is true no crime would have been committed, and no offense could be made to sustain the indictment but a previous vote at *the* election, to wit, the election that had been described. This was the offense charged. The oath, and the matters it contained, having been sufficiently alleged, the only point of law is, was the falsity of this oath sufficiently stated? Upon this point I cannot concur in the opinion just read. As to the allegation of falsity, I understand the rule to be, that it must be set forth in such a manner "as to afford the defendant information of what is intended to be proved." This was sufficient, even before our statute of jeofails. What was the crime? Having previously voted at that election? Certainly not. The previous voting might have been lawful. What was the oath? That he had not previously voted; and swearing to this was the crime; and this is what the indictment charged. Of what does the indictment inform him? That he had so previously voted. And it goes further, and beyond this, and informs him of the very place in another ward of the same city where he had so voted, *at that election;* that is, the election which was well set forth. This is more specific than the terms of the law; more specific than the terms of the oath. Of what sensible importance is it that the prisoner should be informed that the persons who received his first vote, were duly authorized to receive it? The crime charged did not consist in voting the first time; that was no part of the offense necessary to be described. It was not the substance of the offense. The legal presumption is that his first vote was a legal vote. Whether it was, or not, was not an issue on the trial. The defendant is not permitted to deny it; the people were not bound to prove it to have been legal. When they proved that he had personally voted at the election, the burden was upon the defendant to impeach its validity. He had assumed it to be legal by

voting. The crime was, in swearing he had not before voted at that election; and this was fully set forth. It may be assumed that he had a right to vote where he first voted. The people have not, by their indictment, complained of that vote. It does not lie in the mouth of the prisoner to say he had no right to vote there. That fact has no materiality or importance, beyond the fact of showing that his oath was false. The fact that he had voted is sufficiently stated; and it gave the defendant notice that his perjury was in swearing that he had not so voted. There are two rules of pleading that sustain this assignment of perjury as contained in the indictment. First. In statute offenses, if the statement be of a particular fact, negativing that fact is sufficient; and this rule is laid down as to pleading, in perjury. (2 *Arch. Crim. Plead.* 966.) Second. That the falsity must be set forth in such a manner as to afford the defendant information of what is intended to be proved; and this is held to be sufficient. Both these rules have been observed in this case. There is a class of cases found in the books, which lay down the rule given in the opinion read; but they can be distinguished, and are distinguished, by this: Where the false statement or words of the oath assigned, is general, it is not sufficient to make the *general* allegation that such statement was false, but the *particulars* in which it is false must be alleged. In such case they are of the substance, and are therefore material. But where the perjury consists in a single or particular statement, it is sufficient to assign, generally, that such particular statement is false. But the case is otherwise where the false words assigned are particular, or specific; and in such case the assignment may be general, if the general words bring home to the defendant's knowledge the certainty of what is to be proved. So the rule is laid down by *Comyn*, that general words are sufficient where the certainty lies within the defendant's knowledge, (*Dig. Pleader*, 26;) and in *The People* v. *Phelps*,

(5 *Wend.* 120,) it was held sufficient, if all the circumstances necessary to describe and render the charge intelligible in its legal requisites, appear on the face of the proceeding, and inform the defendant of the charge against him. (*Biggs* v. *The People*, 8 *Barb.* 551.) The defect complained of here could not tend to prejudice the prisoner. (*The People* v. *Powers*, 6 *N. Y.* 50. *Sanchez* v. *The People*, 22 *id.* 150.) The assignment of falsity in this case, gave the defendant full notice of the particulars in which his oath was false; giving time, place, and voting at the election aforesaid. I have been compelled to come to the conclusion that this assignment was full and sufficient. Besides, the technicalities of pleading, in indictments, are inapplicable, under our Revised Statutes. Objections can only be taken to defects of substance, not to matters of form, unless they tend to the prejudice of the defendant. That cannot be alleged in this case. The indictment contains all the substance of the offense, with all the circumstances necessary to render it intelligible to the defendant, as to what was to be proved against him. I think it is good. But if these objections had merit in them, they are unavailing after judgment; especially after a plea of guilty.

I think the judgment should be affirmed.

Conviction reversed.

[THIRD DEPARTMENT, GENERAL TERM, at Elmira, April 4, 1871. *Miller*, P. J., and *Potter* and *Parker*, Justices.]